MICHAEL CORSE, RESPONDENT, v. PHILADELPHIA AND READING RAILWAY COMPANY, APPELLANT.

Argued July 1, 1915—Decided November 15, 1915.

The contributory negligence of a traveler, when injured on the highway at a grade crossing of a steam railroad, is a jury question if different conclusions upon the subject can be naturally drawn from the evidence, and this is so in a case where the traveler's attention is directed to a source of apparent danger, distracting the attention from the source of probable danger.

On appeal from the Supreme Court.

For the respondent, *John H. Kafes* and *Martin P. Devlin.*

For the appellant, *Frank S. Katzenbach, Jr.*

The opinion of the court was delivered by

BLACK, J.   This suit was instituted by the respondent to recover damages for personal injuries received at the Marion street grade crossing of the appellant in Trenton.  There was a verdict in favor of the respondent.  The appellant brings the appeal and assigns error in the trial court, in refusing to nonsuit the respondent; in refusing to direct a verdict in favor of the appellant; in the charge, leaving the question of contributory negligence of the respondent to the jury, and a refusal of the trial court to charge as requested, that the respondent was guilty of contributory negligence.

The only question, then, involved in the appeal is whether or not the trial court was in error in leaving the question of contributory negligence of the respondent to be determined by the jury as a jury question. We think the rulings of the trial court were not error. The contributory negligence of the respondent was a jury question under the testimony, as disclosed in the record. The essential facts are these: The respondent, Michael Corse, was driving a horse and wagon south on Marion street in Trenton, where the railroad of the appellant crosses at grade, on July 18th, 1914, at or near ten o'clock in the evening. He was accompanied by Clarence F. Weber, who was riding in the wagon alongside of him. The crossing has three tracks. There was a light at the corner of the intersecting street on the south side of the tracks. On the right hand side of Marion street, the direction from which the train came, there are buildings. Corse stopped three times for the purpose of looking and listening before he proceeded to cross the tracks. The horse and wagon was being driven in a southerly direction on Marion street. The train which struck the respondent was proceeding on the centre track, in an easterly direction; that is, toward the Warren street terminal at Trenton. In approaching the crossing in a southerly direction on Marion street, which was the direction in which the respondent was driving, a view of the track, from the centre of Marion street can be obtained at a point fifty-one feet and six inches (51' 6"), from the first or north rail of the centre or main track on which the train came, for a considerable distance, almost to Prospect street, about eight hundred and ninety-five feet away. Along that fifty-one feet and six inches, there is only a watchman's box, four feet by four feet. Some fifteen or sixteen feet, just across the tracks, on the other side and on the southerly track, there were three or four engines blowing off steam or exhausting steam. The following extract is taken from the testimony of Clarence F. Weber, one of the respondents:

"*Q.* Did you notice anything else there?

"*A.* The engines across the track.

"*Q.* What were they doing, if anything?

"*A*. They were standing there exhausting steam.

"*Q*. How far from the Marion street pavement?

"*A*. They were not far from the pavement; they were not over five or six feet from the pavement.

"*Q*. Then you did what?

"*A*. We kept watching these engines on account of them exhausting steam, for fear they would move.

"*Q*. Then what?

"*A*. Then we looked up the track again and then we started across a little further, and we watched the engines and looked again and didn't see anything and then we started to cross the track watching those engines that were right near us.

"*Q*. What happened?

"*A*. Then we were struck by the train and I was knocked unconscious."

It therefore seems quite evident that the engines exhausting steam were a source of apparent danger with the surrounding circumstances. Whether respondent's attention was directed to this source of apparent danger, thus distracting the attention from the source of probable danger, is a question on which, under the testimony in this case, different conclusions may fairly be drawn, and if so, the question of the respondent's contributory negligence is a jury question, and properly so treated by the trial court. The rule is aptly stated in these words: "Where there are doubtful and qualifying circumstances, the question of negligence or want of proper care is a matter of ordinary observation and experience of the conduct of men, and as such must be left to the jury as being within their legal province." *Bonnell* v. *Delaware, &c., Railroad Co.*, 39 *N. J. L.* 189. There are many cases in our reports and those of other jurisdictions, illustrating this principle, as applied to injuries occurring at steam railroad grade crossings. The trial judge was not in error in treating the question of respondent's contributory negligence as a jury question.

There being no error in the record, the judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, MINTURN, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 14.

*For reversal*—None.